NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JOHN J. KUCERA (Cal. Bar No. 274184)
Assistant United States Attorney
Asset Forfeiture Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3391
    Facsimile:  (213) 894-7177
    E-mail:   John.Kucera@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | No. CV 18-670 |
|---|---|
| Plaintiff, | **VERIFIED COMPLAINT FOR FORFEITURE** |
| v. | 21 U.S.C. § 881(a)(6) |
| $148,145.00 IN U.S. CURRENCY, | [D.E.A.] |
| Defendant. | |

The United States of America brings this claim against the defendant $148,145.00 in U.S. Currency, which is more particularly described below, and alleges as follows:

**JURISDICTION AND VENUE**

1.   This is a civil forfeiture action brought pursuant to 21 U.S.C. § 881(a)(6).

2

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in the Central District of California, pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff is the United States of America ("plaintiff" or the "government").

5. The defendant is $148,145.00 in U.S. Currency ("defendant currency"), which, on July 25, 2017, at Los Angeles International Airport (commonly known as "LAX"), a Drug Enforcement Administration ("DEA") Special Agent ("SA") seized from Daniel Flint ("Flint"). The DEA SA seized the defendant currency following a "sniff" examination conducted by a trained and certified narcotics canine, which examination resulted in a positive alert to the scent of narcotics coming from the defendant currency contained within a bag that Flint was transporting within LAX.

6. The defendant currency is currently in the custody of the United States Marshals Service in this District, where it shall remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of the International Human Rights Commission ("IHRC"), Robert Shumake ("Shumake"), and Flint may be adversely affected by these proceedings.

## FACTS SUPPORTING FORFEITURE

8. On July 25, 2017, Special Agents ("SAs") with the Federal Bureau of Investigations ("FBI") contacted task force members of "LAX

3

Group 3"[1] and advised that FBI was conducting an investigation at LAX regarding a subject identified as Daniel Flint ("Flint"). This investigation led to Flint's eventual single-count indictment for a violation of 49 U.S.C. § 46314(a) and (b)(2).[2]

**Flint's Relevant Travel History**

9. On July 20, 2017, at Chicago O'Hare International Airport ("O'Hare"), Flint presented himself to the Transportation Security Administration ("TSA") for passenger screening intending to board a flight to LAX. At O'Hare, Flint told a TSA official that he (Flint) was a diplomat with the IHRC, and Flint insisted that his carry-on luggage (or at least some portion of it) was exempt from screening under the "Laws of the Geneva Convention." Upon questioning, Flint could not produce a diplomatic passport, but instead produced an IHRC "Diplomatic Identification Card." TSA officials explained to Flint that his documents were insufficient to exempt his baggage from inspection, after which Flint declined to submit his baggage to screening and did not fly out of O'Hare that day.

10. Later that same day, Flint presented himself to the TSA for passenger screening at Chicago's other international airport, Midway International Airport ("Midway"), from which airport Flint had booked a flight to Minneapolis-St. Paul International Airport, with a later connecting flight to LAX. At Midway, Flint again claimed to be a diplomat, again presented the same IHRC "Diplomatic Identification Card," and again claimed that his carry-on baggage was thereby exempt

---

[1] LAX Group 3 members are comprised of Los Angeles World Airport, Los Angeles Police Department, Los Angeles Sheriff's Department, Drug Enforcement Administration and Homeland Security Investigations.

[2] Flint's indictment is at docket number CR 17-697-SJO, which case is presently set for trial on May 28, 2018.

4

from TSA passenger screening. At Midway, the TSA officials accepted Flint's representations, and TSA allowed Flint to travel without submitting his baggage to TSA screening.

11. On July 25, 2017, at Chicago's Midway Airport, Flint again presented himself to TSA for passenger screening intending to fly through Minneapolis-St. Paul Airport en route to LAX. Again, Flint presented the same IHRC identification and again Flint claimed that his carry-on baggage was thereby exempt from screening. TSA officials then allowed Flint to travel without submitting his baggage to TSA screening. On this occasion, however, while Flint was en route to LAX, TSA officials eventually contacted the FBI, and, working with FBI, TSA officials elected to conduct a "reverse screening" on Flint upon his arrival at LAX.

**Reverse Screening and Interview of Flint**

12. On July 25, 2017, upon Flint's arrival at LAX, TSA initiated the "reverse screening," Flint then signed an acknowledgement that he had been advised and understood his *Miranda* rights, and Flint agreed to speak with FBI Special Agents. Agents requested to search Flint's bags including what purported to be a "diplomatic pouch," but Flint stated that he was a lawyer representing a client who granted him diplomatic status, and Flint had no authority to consent to a search of the bag, and Flint could not divulge his client's identity or any other information due to attorney-client privilege. Flint then agreed to contact his client who could consent to a search, at which time Flint contacted an individual who identified himself as "Robert Shumake" ("Shumake"). Over speakerphone, Shumake granted agents consent to search the pouch in Flint's possession.

5

13. Inside the pouch was a plastic grocery bag that contained what was later confirmed to be $148,145.00 in U.S. Currency (the defendant currency), which funds bore indicia of narcotic trafficking because they were extremely dirty, consisted of various denominations, and were wrapped in rubber bands with inconsistent bank labels.

14. After this, Drug Enforcement Administration ("DEA") SAs arrived with a trained narcotics detecting canine, "Smithy." Smithy examined the defendant currency and positively alerted to the scent of narcotics on the currency, which signifies that the funds had been in close proximity to narcotics recently. As of the positive alert on July 25, 2017, Smithy had received over 500 hours of training in the detection of narcotics (including marijuana, cocaine, methamphetamine, heroin, and opium). Such training includes training that has occurred after Smithy's initial certification on November 15, 2013. Smithy alerts to the scent of those narcotics for which the canine is trained. Smithy's training has included routinely checking United States currency that has been exposed to narcotics recently and currency that is known not to have been exposed recently to narcotics. In order to ensure that Smithy does not alert to the odor of currency itself but instead to the odor of controlled substances on the currency, Smithy does not alert to currency that has not been exposed recently to narcotics. Smithy's most recent re-certification was on January 9, 2018. Since Smithy's initial certification, the canine has been responsible for the location and seizure of those narcotics and sums of United States currency for which Smithy has been trained.

15. After the positive canine alert, agents asked Flint several questions regarding the defendant currency, which Flint refused to answer, asserting attorney-client privilege.

16. Agents also asked Flint about his purported "diplomatic status," and Flint stated that he represented Shumake, who Flint claimed was an IHRC Ambassador to the United States. Agents then questioned Flint about the alleged diplomatic ID card that Flint presented and its unprofessional appearance, to which Flint admitted that he himself laminated the card to protect it from damage.

**Subsequent Investigation**

17. Agents confirmed with the U.S. Department of State that Flint has no diplomatic status with that Department's Office of Foreign Missions ("OFM") and that Shumake is not a recognized ambassador for any organization.[3]

18. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking, was intended to be used in one or more exchanges for a controlled substance or listed chemical, or was used or intended to be used to facilitate a controlled substance or listed chemical violation, in violation of 21 U.S.C. § 841 *et seq*. The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays:

a. that due process issue to enforce the forfeiture of the defendant currency;

---

[3] According to the U.S. Department of State Foreign Affairs Manual, Section 232.4, the OFM is the only Department of State entity authorized to accept the accreditation of foreign representatives in the United States.

      b.    that due notice be given to all interested parties to appear and show cause why forfeiture should be not be decreed;

      c.    that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

      d.    for such other and further relief as this court may deem just and proper, together with the costs and disbursements of this action.

Dated: January 26, 2018

NICOLA T. HANNA  
United States Attorney  
LAWRENCE S. MIDDLETON  
Assistant United States Attorney  
Chief, Criminal Division  
STEVEN R. WELK  
Assistant United States Attorney  
Chief, Asset Forfeiture Section

    /s/*John J. Kucera*  
JOHN J. KUCERA  
Assistant United States Attorney

Attorneys for Plaintiff  
United States of America

8

## VERIFICATION

I, Dennis John, hereby declare that:

1.  I am a Special Agent with the Drug Enforcement Administration. I am the case agent for the civil forfeiture action entitled *United States v. $148,145.00 in U.S. Currency*.

2.  I have read the above Verified Complaint for Forfeiture and know its contents, which is based upon my own personal knowledge and reports provided to me by other agents.

3.  Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 26, 2018 in Los Angeles, California.

_____
DENNIS JOHN
Special Agent, DEA