E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section
DAN G. BOYLE (Cal. Bar No. 332518)
TARA B. VAVERE (Cal. Bar No. 279470)
Assistant United States Attorneys
Asset Forfeiture & Recovery Section
Federal Courthouse, 14th Floor
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-2426/5901
        Facsimile: (213) 894-0142
        E-mail: Daniel.Boyle2@usdoj.gov
                Tara.Vavere@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>                    v.<br><br>$148,145.00 IN U.S. CURRENCY,<br><br><br>          Defendant.<br><br>ROBERT SHUMAKE,<br><br>          Claimant. | No. 2:18-cv-670-PVC<br><br>GOVERNMENT'S MOTIONS IN LIMINE<br><br>Trial Date: December 12, 2023<br>Final Pretrial Conf.: Nov. 17, 2023 |

          Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Dan G. Boyle and Tara B. Vavere, hereby file the government's Motions in Limine in advance of trial in this matter.

Dated: November 3, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section


_____/s/_____
DAN G. BOYLE
TARA B. VAVERE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**<u>Government's Motion in Limine No. 1</u>**

*<u>Admission of Daniel Flint's Conviction</u>*

The government respectfully moves this Court in Limine to Admit the Judgment and Conviction and associated Indictment of Daniel Flint, pursuant to Federal Rule of Evidence 803(22).

*<u>Factual Background</u>*

On October 18, 2018, after a three-day trial, a jury sitting in the District returned a guilty verdict against defendant Daniel Flint ("Flint") in <u>United States v. Daniel Flint</u>, Case No. 2:17-cr-00697-SJO, finding Flint guilty of entering an airport area in violation of security requirements. The Ninth Circuit Court of Appeals subsequently affirmed Flint's conviction and sentence. See <u>U.S. v. Daniel Flint</u>, 2:17-cr-00697-SJO, ECF No. 195 (Mandate of Ninth Circuit).

As set forth in the single-count Indictment underlying Flint's conviction, on or about July 25, 2017, Flint attempted to, and did, intentionally evade airport security procedures while transporting a purported diplomatic pouch containing $148,145.00 in cash (the Defendant Currency) to Los Angeles International Airport. See Ex., 1, (Indictment, <u>United States v. Flint</u>, Case No. 2:17-cr-00697-SJO). Flint did so by "falsely claiming that [the pouch] was a diplomatic courier pouch that was exempt from TSA screening and by presenting documents purporting to support defendant [his] false claim of diplomatic status." <u>Id</u>.

On November 7, 2017, Flint was charged with one count of entering an airport area in violation of security requirements in violation of 49 U.S.C. § 46314(a) and (b)(2).  The jury returned a guilty verdict on October 18, 2018, and on September 16, 2019, a

1

Judgment and Commitment Order was entered, sentencing Flint to 14 months' imprisonment.

*Argument*

Federal Rule of Evidence 803(22) provides an exception for certain criminal judgments of conviction to the general bar on hearsay evidence.  That exception applies to Flint's 2018 conviction and the underlying facts as described in the Indictment,[1] because it is consistent with Rule 803(22), namely, the judgment was entered after a trial, the conviction was for a crime punishable by imprisonment for more than one year, and the evidence of the conviction is admitted to prove a fact essential to the judgment in the instant case.

The first two factors required by Rule 803(22) are easily satisfied by indisputable facts: The Flint judgment and commitment was entered after a jury trial, and Flint was sentenced to 14 months imprisonment for this offense.

---

[1] The Court can also take judicial notice of the Indictment, which provides necessary context to the Judgment and Commitment, and identifies the "fact[s] essential to the judgment" required by Rule 803(22), as necessarily found by the petit jury in Flint's case. See United States v. Daychild, 357 F.3d 1082, 1099 (9th Cir. 2004)(court may take judicial notice of return of an indictment); United States v. Black, 482 F.3d 1035, 1041 (9th Cir. 2007) (court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

Alternately, the Court may admit the Indictment for the non-hearsay purpose of its effect on the listener – namely, the petit jury. The Court need not accept or admit the truth of the allegations in the Indictment, but rather, that these allegations were considered and found true by the jury in Flint's case. See, e.g., Linde v. Arab Bank, PLC, No. 04-CIV-2799-BMC-VVP, 2014 WL 12558572, at *2 (E.D.N.Y. Aug. 1, 2014) ("[I]ndictments may be admissible under Rule 803(22) where they led to a judgment of conviction").

2

1    Rule 803(22) also requires that a conviction may only be

2    admitted to prove a fact essential to the judgment.[2] Here, Flint's

3    conviction establishes and proves beyond a reasonable doubt that

4    Flint evaded airport security by misleading TSA officers in order to

5    avoid having his baggage screened, namely, by falsely claiming that

6    he was carrying a diplomatic courier pouch that was exempt from TSA

7    screening. This fact is essential to the judgment, as the jury

8    necessarily could not have found Flint guilty if they believed that

9    he was in fact a diplomatic courier entitled to avoid screening. And

10   this fact is highly probative here, because it tends to prove that

11   the Defendant Currency had an illicit origin, as such an illegal

12   scheme to hide a large amount of currency from screening has no other

13   credible explanation.

14   In United States v. Seventy Thousand One Hundred Fifty Dollars

15   in U.S. Currency ($70,150.00), a civil forfeiture action against

16   funds alleged to be proceeds of illegal narcotics sales, the court

17   held that statements of fact submitted in support of guilty pleas in

18   a criminal case were admissible under Rule 803(22), holding that "the

19   plea agreements and the accompanying statements of fact go to the

20   essential fact of unlawful drug trafficking, which is necessary to

21   support forfeiture." 2009 WL 3614871, at *4 (S.D. Ohio Oct. 28,

22   2009). See also United States v. 47 mm Cannon, 95 F. Supp. 2d 545,

23

24   [2] The fourth element under Rule 803(22), that "when offered by
     the prosecutor in a criminal case for a purpose other than
25   impeachment, the judgment was against the defendant" is not
     applicable here, as this is not a criminal case, and thus it is
26   irrelevant whom the judgment was against. See, e.g., U.S. ex rel.
     Miller v. Bill Harbert Int'l Const., Inc., 608 F.3d 871, 892 (D.C.
27   Cir. 2010) ("[B]ecause this is a civil case, BIE's guilty plea may be
     admitted under Rule 803(22) against all the defendants as long as the
28   plea was admitted 'to prove any fact essential to sustain the
     judgment.'").

548 (E.D. Va. 2000) (admitting related firearms conviction, and holding that "the Court finds that Boles' guilty plea and the statements made therein apply to the other Claimants, Connie Christopher and Chris Dickenson."); <u>Scholes v. Lehmann</u>, 56 F.3d 750, 762 (7th Cir. 1995) (admissions in guilty plea agreement of Ponzi scheme principal admissible under Rule 803(22) in civil action against persons other than principal).[3]

Flint's conviction on the facts alleged in the Indictment tend to prove the source of the Defendant Currency, and is thus admissible under Rule 803(22).

---

[3] Alternately, Flint's criminal conduct as Claimant's agent may be imputed to Claimant as his employer. <u>See RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.</u>, 49 F.3d 399, 403 (8th Cir. 1995) (guilty plea of employee admissible against employer).

4

**Government's Motion in Limine No. 2**

*Admission of Prior Currency Seizures from Claimant's Couriers*

The government respectfully moves this Court in Limine to admit evidence regarding a currency seizure and subsequent civil forfeiture action entitled <u>United States v. Approximately $252,140.00 In U.S. Currency</u> in the Western District of North Carolina, Case No. 18-cv-646, as well as a prior currency seizure in or about August of 2016 which was resolved administratively by U.S. Customs and Border Protection, both pursuant to Federal Rules of Evidence 401 and 404(b).

*Factual Background*

Roughly one year before the seizure of the Defendant Currency from Flint, in June of 2016, $252,140 in U.S. Currency was seized from another of Claimant's purported diplomatic couriers in largely identical circumstances. As detailed in the Verified Complaint in that action (the "W.D.N.C. Compl."), on June 27, 2016, TSA officers at Atlanta-Hartsfield-Jackson International Airport identified Darren Lennard Coleman ("Coleman") at a screening checkpoint after discovering a large amount of U.S. Currency in Coleman's carry-on luggage. W.D.N.C. Compl. ¶ 8. Coleman was bound for San Francisco, California, by way of Charlotte-Douglas International Airport ("CDIA"). <u>Id</u>. Based on TSA information, law enforcement at CDIA contacted Coleman, where he produced a letter purportedly from the International Human Rights Commission ("IHRC"), signed by Claimant here ("R.S. Shumake, Ambassador at Large"), and Coleman stated to officers that he had been retained by Claimant to transport U.S. Currency from Atlanta to San Francisco, California. <u>See</u> W.D.N.C. Compl. ¶ 9-11. Coleman then called Claimant, who stated to officers

5

that the U.S. Currency carried by Coleman had been collected during a fundraiser he held the day before, but that the fundraiser had been held in his hotel room and that only two people had attended the fundraiser and donated the currency. See W.D.N.C. Compl. ¶ 21. Claimant also informed officers that he routinely transported large amounts of U.S. Currency overseas for his organization and never reported this currency, because he was accorded diplomatic immunity. Id., ¶ 22. A narcotics-detection canine subsequently alerted to the U.S. Currency that Coleman was carrying. Id., ¶ 12. Officers seized the U.S. Currency carried by Coleman, and a civil forfeiture complaint was filed. Id., ¶ 1, 6.

Claimant, as well as his agent, Coleman, admitted many of the above allegations in their answers in the W.D.N.C. action, and in addition, Claimant's Answer also contained numerous affirmative statements. See Ex.2 (Chart of Admissions and Affirmative Statements in Claimant's W.D.N.C. Answer). Claimant was also deposed in that action, which is the subject of a further Motion in Limine (see Government's MIL No. 3, *infra*).

In addition to the W.D.N.C. seizure, roughly three months later, in or about August of 2016, another courier acting as Claimant's agent was stopped and had U.S. Currency seized by law enforcement. The facts of this seizure are less clear, as Claimant did not request judicial proceedings and the seizure was resolved administratively in or about 2019 by CBP.[4] But according to a petition to CBP authored by Claimant's counsel and signed by Claimant, on or about August 22,

---

[4] While the resolution of this seizure is not entirely clear, it appears that some or all of this U.S. Currency was returned to Claimant's counsel by CBP, in 2019 or later pursuant to a hold harmless agreement.

2016, United States Immigration and Customs Enforcement seized $170,130 at Hartsfield-Jackson Atlanta International Airport from Douglas Hampton, who was acting as a purported diplomatic courtier for Claimant. Claimant's counsel represented that this U.S. Currency consisted of charitable donations to the IHRC, that the currency was intended to be delivered from Atlanta to San Francisco, that the currency was intended to open IHRC offices in San Francisco, and that the currency was bundled inside Hampton's carry-on luggage in increments of $2,000.00-$5,000.00 and in denominations of $20, $50, and $100 dollar bills.

### *Argument*

Rule 404(b) states, in relevant part:

> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed.R.Evid. 404(b)(1-2).

Here, evidence regarding the prior seizures, including Claimant's admissions in the W.D.N.C. action, are admissible because this evidence is relevant under Rule 401, and bears on Claimant's knowledge, motive, plan, and lack of mistake pursuant to Rule 404(b).

First, the prior seizures are relevant here. Evidence is admissible if it is relevant, that is, if it tends to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence. See Fed.R.Evid. 401, 402. Courts have found that multiple seizures from the same claimant

7

occurring near in time are probative evidence of an illegal plan or purpose. For example, in United States v. $59,520.00 in U.S. Currency, the government offered evidence at trial that the claimant there had a second parcel containing currency seized within months of the seizure of the defendant currency, which was sent in circumstances similar to the seized currency. No. CV14-00284-SJO (ASX), 2015 WL 5031904, at *3 (C.D. Cal. Aug. 24, 2015). The Court held that this similar seizure was "probative and gives credibility to the government's theory concerning the subject parcel." Id. Similarly, in United States v. Thirty Nine Thousand Seven Hundred Eighty Five Dollars in U.S. Currency ("$39,785.00"), approximately ten months after the cash seizure at issue, government agents seized another $100,000 from the claimant and two female companions in similar circumstances – in both cases claimant was stopped before boarding an international flight with a large amount of currency hidden on his body, initially denied having such currency, and a narcotics detection canine alerted to the currency. 828 F. Supp. 2d 740, 742 (E.D. Pa. 2011). Applying Rule 404(b), the $39,785.00 court held that the second seizure was relevant evidence of knowledge and modus operandi. Id., at 744 ("Evidence of the [second] seizure has a tendency to establish [claimant's] knowledge of the nature of the currency and help prove he has a specific modus operandi for concealing drug proceeds in a manner to avoid detection by law enforcement.").

The reasoning of these cases applies equally in this case. Roughly a year before the seizure at issue here, at least two of Claimant's purported diplomatic couriers were stopped, and their currency seized by law enforcement after their purported diplomatic

8

status was not recognized. Claimant was certainly on notice by 2017 that his supposed diplomatic immunity was not recognized by law enforcement. Logically, Claimant would have begun using banks or wire transfers rather than continuing with cash couriers under the pretense of diplomatic status – or at least stopped telling his couriers that they had diplomatic immunity. But he did not. Instead, Claimant continued to move currency under the guise of diplomatic immunity, but added a new defense mechanism – a purported diplomatic pouch. See ECF No. 1, ¶ 12-13. Again, a legitimate organization would logically have attempted to avoid further cash seizures rather than continue on the same course. Claimant's continued course of conduct is evidence that the seizure here was not due to mistake or ignorance, but rather, part of an intentional course of conduct aimed at avoiding detection by law enforcement and airport screening personnel. This evidence tends to prove that the Defendant Currency had an illicit source.

Much like in $39,785.00, Rule 403 is also no basis for excluding this evidence. This case will be tried before the Court, not a jury, so there is no risk that admitting evidence of these seizures would result in a verdict based on "an improper or emotional basis." $39,785.00, 828 F. Supp. 2d at 745; see also E.E.O.C. v. Farmer Bros. Co., 31 F.3d 891, 898 (9th Cir. 1994) ("[I]n a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial" (internal citation omitted); Mass Engineered Design, Inc. v. Planar Sys., Inc., No. 3:16-CV-1510-SI, 2018 WL 3323762, at *4 (D. Or. July 6, 2018) ("Concerns of relevance and prejudice are different in a bench trial and Rule 403 has a limited role, if any").

Neither is this evidence likely to lead to "undue delay [or] wasting time" under Rule 403. Claimant largely admitted the relevant allegations in the W.D.N.C. Complaint. See e.g., W.D.N.C. Case No. 18-cv-646-DSC, ECF No. 12 (Shumake Answer), at 3 ("Claimant admits that the TSA discovered the Defendant Currency during a screening of Darren Lennard Coleman's carry-on bag at the Atlanta-Hartsfield-Jackson Airport."). As such, these are at least admissions of a party opponent, if not judicial admissions. See Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) ("A statement in a complaint, answer or pretrial order is a judicial admission, as is a failure in an answer to deny an allegation."). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Id. Courts have discretion whether to consider an admission in an answer as either a judicial admission, or simply as an evidentiary admission, which may be contradicted by other evidence. See In re Applin, 108 B.R. 253, 259 (Bankr. E.D. Cal. 1989) ("Evidentiary admissions, unlike judicial admissions, are mere evidence, are not conclusive, and may be contradicted by other evidence"). Here, the government simply seeks to offer these facts as evidence, but in either event, there is little risk of a 'trial within a trial' where Claimant has admitted or asserted these facts. Of course, Claimant may seek to offer evidence to contextualize these admissions, but this is unlikely to needlessly delay trial, and certainly does not substantially outweigh the probative value this evidence has.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Government's Motion in Limine No. 3

*Admission of Shumake's Prior Statements*

The government respectfully moves this Court in Limine to Admit the prior statements and testimony of Robert Shumake in <u>United States v. Approximately $252,140.00 in U.S. Currency</u>, Western District of North Carolina, Case No. 3:18-CV-646 (the "W.D.N.C. action") pursuant to Federal Rule of Evidence 801.

### *Factual Background*

As noted above, the W.D.N.C. action was filed on December 12, 2018. During discovery conducted in the W.D.N.C. action, Claimant sat for a deposition on November 17, 2020. During this deposition, Claimant made numerous admissions regarding his involvement in a lucrative – but illegal – marijuana cultivation operation run out of California, which was unable to use ordinary banking channels:

Q.   […] When did you get involved in the cannabis business?

A.   2015 I believe.

Q.   And how did that come about? Did somebody introduce the business to you? Did you seek it out? Explain to us how you got involved in this?

A.   I got involved in it – well you're asking the history of it. My secretary got me involved in it back in 2010.... it went from growing cannabis to help her son to becoming a cannabis dealer and cannabis broker in that space. I started studying real estate deals that were in a cannabis space that were unlicensed and then licensed in those real estate deals for significant growth and expansion. And inside of that, that's kind of how I got tied into the cannabis space.

Ex. 3, at pp. 22-23.

Q.   So is there actually cannabis being grown at the Via Real Property?

A.   Yes.

Q.   Who's growing the cannabis?

11

1      A.   Louis Armstrong and Associates.

Ex. 4, at p. 36.

    Q.   Why did the banks shut you down, Mr. Shumake, shut down
        Louis Armstrong and Associates?

    A.   They –– there's a big issue between banks and cannabis, so
        –– and what's interesting we went to the bank and shared
        with the bank that this is a cannabis business, are we able
        to deposit funds into the bank and the banks allowed for
        that to happen. Then as you move forward the compliance
        people now are just higher than the general manager of the
        bank, because of their own compliance issues they shut down
        the account. This has happened on numerous occasions in the
        cannabis industry.

Ex. 5, at pp. 37-38.

    Q.   [U]nder federal law at the time you wrote [a prior]
        declaration and you were selling cannabis out of this
        property, selling cannabis was illegal?

    A.   Federally cannabis is still a Schedule 1 right now
        federally. Presently it's still that way which is why the
        banks would not allow you to deposit money because most of
        your banks are federally chartered.

Ex. 6, at p. 46. Claimant also authenticated numerous documents
during his deposition, which were appended to the deposition
transcript and also relevant here.

*Argument*

Pursuant to Federal Rule of Evidence 801(d)(2), an opposing
party's statement is not hearsay when it is offered against an
opposing party and was made by the party in an individual capacity.
Claimant's prior statements, made during his deposition in the
W.D.N.C. action, are admissions made by a party opponent and are thus
not hearsay.

Similarly, evidence is relevant if it tends to make the
existence or nonexistence of a disputed material fact more probable

than it would be without that evidence. See Fed. R. Evid. 401, 402.
Claimant's statements in his deposition in the W.D.N.C. action bear
heavily on his cannabis businesses in California, his inability to
use banks for the proceeds of this cannabis business, and his
involvement with the IHRC – all of which are relevant and material
here.

Under Rule 801(d)(2), these statements are admissible as non-
hearsay statements of a party opponent, namely Claimant. Furthermore,
there is no reason to question the authenticity of the W.D.N.C.
action deposition transcript under Rule 901, as the transcript is
notarized and sworn to. See Sweet People Apparel, Inc. v. Phoenix
Fibers, Inc., No. 16-cv-00940-TJH-JCX, 2017 WL 4785971, at *2 (C.D.
Cal. Aug. 18, 2017) ("[A] deposition transcript, whether in its
entirety or excerpted, is authenticated only when it, inter alia,
includes the reporter's signed certification that the transcript is a
true record of the deposition testimony"), aff'd 748 F. App'x 123
(9th Cir. 2019).

Rule 32(a)(2) allows the use of a deposition "for cross-
examination, impeachment, 'or for any other purpose allowed by the
Federal Rules of Evidence,' without regard to whether the witness is
unavailable." Giganews, Inc. v. Perfect 10, Inc., No. 17-cv-05075-AB-
JPRx, 2019 WL 1422723, at *7 (C.D. Cal. Mar. 13, 2019); see also Fed.
R. Civ. P. 32 Advisory Cmte. Notes (explaining that Rule 32 was
revised to make clear that "the rules of evidence are to be applied
to depositions offered at trial as though the deponent were then
present and testifying at trial. This eliminates the possibility of
certain technical hearsay objections […] based not on the contents of
the deponent's testimony but, on his absence from court."). As

1  explained above, Claimant's W.D.N.C. action deposition is relevant
2  non-hearsay, and will be authenticated at trial. As such, it is
3  "allowed by the Federal Rules of Evidence."

4          Alternately, Rule 32(a)(8) also permits use of Claimant's
5  W.D.N.C. deposition here. Subsection (a)(8) states, in relevant part,
6  that "[a] deposition previously taken may also be used as allowed by
7  the Federal Rules of Evidence."[1] As detailed above, Claimant's
8  W.D.N.C. action deposition is relevant, non-hearsay evidence under
9  the Federal Rules, and thus subsection (a)(8) provides an independent
10 grounds for permitting the admission of Claimant's W.D.N.C.
11 deposition testimony, or excerpts of the same, at trial here.[2]

12
13
14
15
16
17
18

19          [1] Subsection (a)(8) also provides that "[a] deposition lawfully
20 taken and, if required, filed in any federal- or state-court action
   may be used in a later action involving the same subject matter
21 between the same parties, or their representatives or successors in
   interest, to the same extent as if taken in the later action." While
22 the government submits that this action and the W.D.N.C. action do in
   fact involve "the same subject matter between the same parties," this
23 question is irrelevant, as this earlier clause of subsection (a)(8)
   does not limit the latter clause providing for use "as allowed by the
24 Federal Rules of Evidence." See, e.g., Vedros v. Grumman, No. CIV.A.
   11-1198, 2015 WL 3796379, at *4 (E.D. La. June 18, 2015) ("While Rule
25 32(a)(8) does impose a requirement that the deposition involve the
   same subject matter and same parties as the current trial, it also
26 allows for the use of deposition testimony at trial when such is
   "allowed by the Federal Rules of Evidence").

27          [2] To be clear, however, only the government may offer Claimant's
   W.D.N.C. deposition transcript into evidence, as the transcript is
28 hearsay not subject to an exception for Claimant, as he is not a
   party-opponent of himself.

**Government's Motion in Limine No. 4**

*Admission of Department of State Records*

The government respectfully moves this Court in Limine to admit records from the U.S. Department of State under Federal Rule of Evidence 803(8).

*Factual Background*

The Defendant Currency was seized from Daniel Flint at Los Angeles international airport on July 25, 2017, after Flint stated to TSA officers that he was a lawyer representing a client who granted him diplomatic status and carried the Defendant Currency in a purported diplomatic pouch. The government seeks to introduce two records from the U.S. Department of State (the "USDS Letters") confirming the lack of any recognized diplomatic status for Flint and/or Claimant at the time of the seizure.

In each of the USDS Letters, the Director of the United States Department of State, Office of Foreign Missions ("DOS-OFM"), sets forth DOS-OFM's activities and responsibilities, and states that DOS-OFM has no record of either Claimant or Flint having any form of recognized official acts immunity at the relevant time. One of the USDS Letters goes on to state that, based on a review of DOS-OFM records, there is no record of the IHRC ever having any recognized diplomatic privileges and immunities in the United States. See Exs. 7-8.

*Argument*

Federal Rule of Evidence 803(8) provides an exception to the general hearsay prohibition for public records, stating:

> (8) Public Records. A record or statement of a public office if:

15

1        (A) it sets out:

2            (i) the office's activities;

3            (ii) a matter observed while under a legal duty to
             report, but not including, in a criminal case, a
4            matter observed by law-enforcement personnel; or

5            (iii) in a civil case or against the government in
             a criminal case, factual findings from a legally
6            authorized investigation; and

7        (B) the opponent does not show that the source of
         information or other circumstances indicate a lack of
8        trustworthiness.

9    The USDS Letters are from the DOS-OFM Acting Director, Clifton

10   C. Seagraves. As set forth in the USDS Letters, in his capacity as

11   Acting Director, Seagraves was responsible for overseeing the

12   registration and maintaining the official records of diplomatic

13   agents, consular officers and other employees of foreign governments

14   and international organizations in the United States and its

15   territories, and their family members. These official activities are

16   set out in the USDS Letters, as required by Rule 803(8)(A)(i), and

17   the USDS Letters each set forth DOS-OFM's factual findings from its

18   investigation into whether Claimant, Flint, or the IHRC had any

19   diplomatic privileges or immunities – finding that none did.[1]

20       Nor is there any reason to doubt the accuracy of such DOS-OFM

21   records under Rule 803(8)(B). The justification for the public

22   records exception is the assumption that a public official will

23   perform their duty properly and the unlikelihood that he will

24   remember details independently of the record. Wong Wing Foo v.

25   McGrath, 196 F.2d 120 (9th Cir. 1952).

26   _____

27       [1] Alternately, under Rule 803(8)(a)(ii), DOS-OFM, as the agency
     responsible for tracking diplomatic privileges in the United States,
28   had a legal duty to report whether Claimant or Flint had any
     diplomatic immunity.

1    Courts have regularly recognized that Department of State
2    investigation records fall within the scope of the public records
3    exception. For example, in <u>Mathin v. Kerry</u>, 782 F.3d 804 (7th Cir.
4    2015), the court held that a report from the Diplomatic Security
5    Service of the Department of State a fell within the public records
6    exception, where the DSS report "reflected the results of the DSS
7    investigation into Mathin's claim that he was born in the United
8    States" and concluded that this claim was inaccurate and unsupported.
9    782 F.3d 808-809. The Seventh Circuit found no error in admitting the
10   DSS report under Rule 803(8), and rejected an argument that the DSS
11   report was inadmissible because the investigation could have been
12   more thorough. <u>Id.</u>; <u>see also</u> <u>Doe v. Qi</u>, 349 F. Supp. 2d 1258, 1311
13   n.39 (N.D. Cal. 2004) ("The State Department's annual human rights
14   reports have been held to fall within the public records exception to
15   the hearsay rule under Fed.R.Evid. 803(8), and is thus admissible");
16   <u>United States v. HVI Cat Canyon, Inc</u>., 213 F. Supp. 3d 1249, 1258-59
17   (C.D. Cal. 2016) (report of California Department of Fish and
18   Wildlife Senior Environmental Scientist regarding investigation into
19   oil spill cleanup "falls under the public records exception").

20   Here, the USDS Letters are straightforward reports regarding a
21   review of records kept by DOS-OFM. The USDS Letters are relevant
22   because they establish the lack of any diplomatic status of Claimant
23   and his courier, Flint, at the time the Defendant Currency was
24   seized, and thus tend to prove the illicit source of the
25   Defendant Currency.

26
27
28

1

**Government's Motion in Limine No. 5**

2

*Admission of Agent Training and Experience Testimony*

3       The government respectfully moves this Court in Limine to permit

4   testimony of government witnesses regarding their law enforcement

5   training and experience as part of their percipient witness testimony

6   at trial in this action.

7

*Factual Background*

8       The government expects that at least one law enforcement witness

9   will testify to their personal observations of the Defendant Currency

10   here, and offer lay opinion regarding inferences drawn from those

11   observations which may have been informed by the officers' training

12   and experience. Specifically, DEA Special Agent Steven Prestwood

13   offered testimony at summary judgment regarding his personal

14   observations of the Defendant Currency and how it was packaged,

15   including that the packaging of the defendant currency was consistent

16   with narcotics proceeds. See ECF No. 108-2, ¶ 8 ("I observed a large

17   amount of U.S. currency inside the purported diplomatic pouch.  The

18   money appeared dirty, in various denominations, wrapped in rubber

19   bands without any bank labels, and then placed in plastic grocery

20   bags.  Based on my training and experience, the appearance of this

21   currency was consistent with narcotics proceeds.").[1] In addition,

22   subject to availability, the government may seek to call Officer

23   Michael Hallagan, formerly of the Anderson, California Police

24   Department. Officer Hallagan will not be called as an expert, and is

25

26       [1] Subject to availability and possible fact stipulations, the
government also intends to call TSA Air Marshal Wesley Williams, who
27   was present for the seizure of the Defendant Currency. Should Air
Marshal Williams be available and testify, the government does not
28   expect to offer any expert or lay opinion from him, but reserves
right to do so if such matters are raised by Claimant as impeachment.

expected to testify to statements made by Claimant during an arrest in 2016, and his own observations of Claimant at the time of those statements. Officer Hallagan's interpretations of Claimant's statements or his own observations, however, may similarly be informed by his own training and experience.

*Argument*

Claimant has contended that the government should be precluded from offering any testimony from law enforcement officers based on their training and experience if such officers were not noticed as expects under Rule 702.[2] The government disagrees.

Federal Rules of Evidence 701 and 702 define the scope of witness opinion testimony at trial. Rule 701 states that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. In turn, Rule 702 states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[2] The parties expressly reserved this question to be resolved prior to trial. See ECF No. 135, at 2, n.1.

Fed.R. Evid. 702.

Furthermore, Federal Rule Civil Procedure 26(a)(2)(A) provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Subsection (a)(2)(C) of that Rule further states that, for non-retained experts who do not need to produce a written report, the offering party must disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and a summary of the facts and opinions to which the witness is expected to testify." Reading these rules in concert, a party does not need to disclose as an expert a witness that will offer lay opinion under Rule 701, but must disclose a summary of any non-retained expert opinion testimony prior to trial.

Claimant contends that law enforcement officers who testify to their training and experience are considered experts under Rule 702, and thus must be disclosed pursuant to Rule 26(a)(B)(A), as such training and experience must be "specialized knowledge within the scope of Rule 702." See Fed. R. Evid.d 701(c).

Claimant is incorrect. Courts have routinely held that law enforcement officers who testify to their perceptions as part of an investigation they took part in offer lay option under Rule 701 based on their own observations, even when informed by their own experience; however, an officer opining on an investigation in which they did not directly participate must do so under Rule 702. For example, in United States v. Gadson, the Ninth Circuit explained that "applying Rule 701 to the lay opinion testimony of law enforcement officers, we have held that an officer's interpretation of

intercepted phone calls may meet Rule 701's perception requirement
when it is an interpretation of ambiguous conversations based upon
the officer's direct knowledge of the investigation," however, "an
officer's testimony interpreting recorded conversations may fall
outside the scope of Rule 701 if it is not based on the witness's
perception." 763 F.3d 1189, 1206-07 (9th Cir. 2014)(cleaned up). This
framework has been applied to other observations made by law
enforcement offers as well. See United States v. Cotton, No. 17-
10171, 2021 WL 3201073, at *1 (9th Cir. July 28, 2021)(no error where
trial court permitted lay opinion testimony from law enforcement
officer regarding drug packaging as "consistent with distribution and
sales."); United States v. Reyes Garcia, 794 F. App'x 567, 572 (9th
Cir. 2019) (no error where law enforcement officers gave lay witness
testimony about the suspicious behavior that they observed and
"opined, in cursory fashion, that the behavior was consistent with
counter-surveillance activities"); United States v. Herrera-Osornio,
521 F. App'x 582, 586 (9th Cir. 2013) ("dog sniffs do not necessarily
trigger the expert disclosure requirements of Federal Rule of
Criminal Procedure 16 or require the district court to conduct a
reliability inquiry under Daubert"); United States v. $209,815 in
United States Currency, No. 3:14-CV-00780, 2015 WL 5970186, at *11
(N.D. Cal. Oct. 14, 2015)(applying Herrera-Osornio in civil
forfeiture context); see also United States v. Sayre, 434 F. App'x
622, 624-25 (9th Cir. 2011) (opinions offered by defendant's brother
and sister-in-law regarding their concerns about defendant's stock
trading fell within Federal Rule of Evidence 701 as "their testimony
was based on their experience and set the context for the messages
[defendant] left for his brother"); Everest Stables, Inc. v. Canani,

21

No. 09-cv-9446-DSF, 2011 WL 13213657, at *2 (C.D. Cal. Oct. 6, 2011) ("[M]any courts permit a witness to provide lay opinion testimony identifying a narcotic.").

The fact that a law enforcement officer's percipient observations are informed by his or her professional experience does not mechanically transform lay opinion into expert opinion. See United States v. Gadson, 763 F.3d 1189, 1213 (9th Cir. 2014) (no error where officer testified as lay witness regarding participation in investigation, but referenced training and experience in a single instance); United States v. Flores, 536 F. App'x 709, 711 (9th Cir. 2013) ("The DEA agent's testimony satisfies each of the requirements of Rule 701 of the Federal Rules of Evidence. First, the agent was familiar with drug investigations and firearms, and his testimony was rationally based on his personal knowledge and first-hand observations from previous drug investigations…").

Here, SA Prestwood is expected to testify to his own observations about the Defendant Currency, including its packaging and condition, during his investigation. While this percipient witness testimony may be informed by his training and experience, this testimony falls conformably within the scope of Rule 701. See Cotton, No. 17-10171, 2021 WL 3201073 ("Officers Ruzicka and Guillen gave proper lay opinion testimony that the packaging of the marijuana was consistent with distribution and sales"). As such, notice under Rule 26(a)(2)(C) was not required, and there is no reason to preclude such testimony.

But even if Rules 702 and 26(a)(2)(A) were to apply to SA Prestwood's percipient witness testimony involving his training and experience, here the government has substantially complied with Rule

26(a)(2)(A) and Claimant would not be prejudiced by such testimony at trial. See Goodman v. Staples The Off. Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011) ("When a party fails to make the disclosures required by Rule 26(a), the party is not allowed to use the witness to supply evidence at trial unless it establishes that the failure was substantially justified or is harmless." (citing Fed.R.Civ.P. 37(c)(1))). As the Advisory Committee notes to Rule 26(a)(B)(A) state, disclosures under subsection (a)(2)(C) are "considerably less extensive than the report required by Rule 26(a)(2)(B) [and] Courts must take care against requiring undue detail." Fed.R.Civ.P. 26, 2010 Advisory Committee Notes; see also Green v. Qatar Airways Co., No. 219CV07950-SVW-MAA, 2020 WL 9601990, at *2 (C.D. Cal. Nov. 13, 2020) (Rule 26(a)(2)(C) disclosure must "include enough information to promote the goals underlying the rule: increasing efficiency and avoiding prejudicial surprise")

Here, any failure to provide notice under Rule 26(a)(2)(C) is both substantially justified *and* harmless. As the above-cited precedent shows, the government had no reason to expect that any witness would be testifying pursuant to Rule 702 and thus notice would be required. Moreover, the substance of SA Prestwood's testimony was at the very least disclosed in his declaration in the government's summary judgment opposition. Compare Fed.R.Civ.P. 26(a)(2)(C) (party must disclose "the subject matter on which the witness is expected to present evidence … and a summary of the facts and opinions to which the witness is expected to testify."), with ECF No. 108-2 (Prestwood Decl.), ¶ 8 ("I observed a large amount of U.S. currency inside the purported diplomatic pouch. The money appeared dirty, in various denominations, wrapped in rubber bands without any

bank labels, and then placed in plastic grocery bags. Based on my training and experience, the appearance of this currency was consistent with narcotics proceeds.").[3] Claimant has been on notice of SA Prestwood's expected testimony for nearly two years and has had ample time to prepare to address any such testimony at trial. If any violation of Rule 26 occurred – and the government maintains none did – it was certainly harmless, and no basis for precluding such probative evidence.

---

[3] Should Officer Halligan be available to testify, his relevant reports have been disclosed in discovery, and both the Verified Complaint and SA Prestwood's summary judgment testimony referenced this incident and arrest. See, e.g., ECF No. 108-2, ¶ 12 ("At the LAX Group 3 office, agents conducted a criminal history check on Shumake, and learned that Shumake had a criminal history including arrests for narcotics and fraud, including that Shumake had been arrested in California on a narcotics offense.").

1

**<u>Government's Motion in Limine No. 6</u>**

2

*Excluding Hearsay Donor Letters And Related Hearsay*

3

The government respectfully moves this Court in Limine to

4

exclude admission or any testimony regarding letters produced by

5

Claimant regarding purported donors of the Defendant Currency, should

6

these witnesses not appear to testify at trial.

7

*Factual Background*

8

In the Claimant's motion for Summary Judgment, Claimant

9

submitted a declaration stating that the Defendant Currency had been

10

given to him by two individuals: Robert Kennedy ("Kennedy") and

11

Kenneth Caldwell ("Caldwell"). <u>See</u> ECF No. 103. Claimant offered

12

three documents in support of these assertions: (i) a letter from

13

Claimant dated June 15, 2017 addressed to Caldwell on behalf of

14

Komsan International Realty; (ii) a letter from Claimant dated July

15

14, 2017 addressed to Harold's Chicken Shack 41, care of Kenneth

16

Caldwell; and (iii) A letter from Claimant dated June 26, 2017

17

addressed to Kennedy on behalf of BK Classik Studio, LLC

18

(collectively, the "Donor Letters"). In addition, Claimant previously

19

offered affidavits from certain of these purported donors repeating

20

statements made in the Donor Letters.

21

Neither Caldwell nor Kennedy was deposed during the discovery

22

period here, neither offered a declaration at summary judgment, and

23

no other information been produced regarding these purported donors

24

or the associated letters.

25

*Argument*

26

At present, the Donor Letters are hearsay that do not fall under

27

any exception. Hearsay is a statement, other than one made by the

28

declarant while testifying at the current trial or hearing, offered

in evidence to prove the truth of the matter asserted. <u>See</u> Fed R. Evid. 801(c). Hearsay is not admissible at trial unless otherwise allowed by a federal statute or an exception to the hearsay rule applies. <u>See</u> Fed.R.Evid. 802.

The Donor Letters are the Claimant's own prior out-of-court statements, and are thus impermissible hearsay, as they could only be offered to prove that a portion of the defendant funds were given to Shumake as charitable donations. Such self-exculpatory statements are inadmissible hearsay and should be excluded. <u>See</u> <u>United States v. Ortega</u>, 203 F.3d 675, 682 (9th Cir.2000) (defendant's self-exculpatory statements are inadmissible hearsay). Unless defendant elects to testify at trial, his letters cannot be offered for the truth of statements therein – i.e. that Claimant actually received a donation as alleged.

Similarly, any affidavits relating to certain of the Donor Letters are also hearsay. The purported affiants, Kennedy and Caldwell, are not parties in this matter and these statements are thus not inadmissible hearsay, because they would only be offered to prove the truth of the matters asserted – namely, that Kennedy and Caldwell made charitable donations to the IHRC in 2017. Unless Kennedy and/or Caldwell appear to testify, any such affidavit is impermissible hearsay, not subject to any recognized exception.

The Donor Letters and any related affidavits are thus impermissible hearsay, without any exception, and should neither of the speakers be made available at trial to swear to them, these documents should be excluded.

Dated: November 3, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

        /s/
DAN G. BOYLE
TARA B. VAVERE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA