**DAVID M. MICHAEL, CSBN 74031**
**EDWARD M. BURCH, CSBN 255470**
**LAW OFFICE OF MICHAEL & BURCH, LLP**
**One Sansome Street, Suite 3500**
**San Francisco, CA 94104**
**Telephone:   (415) 946-8996**
**E-mail:       edward@michaelburchlaw.com**

**Attorneys for Claimant ROBERT SHUMAKE**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

UNITED STATES OF AMERICA,                    **No. CV-18-670 FMO**

      Plaintiff,                                   **CLAIMANT'S MOTIONS IN**
                                                          **LIMINE**
v.

$148,145.00 IN U.S. CURRENCY,

      Defendant.
_____/
ROBERT SHUMAKE,

      Claimant.
_____/

### CLAIMANT'S MOTION IN LIMINE # 1
**To Exclude Pending Civil Litigation (E.D.Mi. Case No. 21-cv-12193).**
**Involving Shumake**

     The Government implies that it will try to admit that Claimant Shumake is a

party in a civil litigation brought by the SEC alleging that "that Shumake was the

mastermind behind a fraudulent scheme to crowdfund money to invest in cannabis

cultivation in California", obviously to argue it shows he was more likely to be

involved in the cannabis industry vis-à-vis  the Defendant currency here, to counter Shumake's testimony that Defendant currency in this case was raised and intended for his humanitarian endeavors. *See* Govt. Resp. to Claimant's Motion for Summary Judgment, Doc. 108 (filed 01/13/22) at p. 25 ("the government has and will offer admissible evidence other than the dog alert of a connection to narcotics here"), at p. 27 (citing Fed.R.Evid. 404(b)), at p. 28 (referring to *United States Securities and Exchange Commission v. Shumake*, et al., E.D.Mi. Case No. 21-cv-12193).

Initially, it is unclear how the Government would introduce any substantive information about the pending litigation in a form that is not inadmissible hearsay. To the extent the Government might be able to provide such evidence in an admissible *form*, that pending litigation, and any substantive aspects about that litigation, should be excluded as text book propensity evidence prohibited by Rule 404(b) and in any event because it is more prejudicial and lending itself to confusing issues than it is probative, if it is probative at all (Rule 403).

F.R.Evid. 404 categorically prohibits the use of "character evidence," i.e. propensity evidence, and "other-acts" evidence offered to prove action "in accordance with character."

The purpose of Rule 404 is "simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person, implying that the jury needn't worry overmuch about the strength of the government's evidence" in the case at hand. *United States v. Taylor*, 522 F.3d 731, 735-36 (7th Cir. 2008).

> To ensure that defendants are protected from the prejudicial effect of their prior convictions, the government must establish that evidence of a defendant's prior bad acts is admissible for a proper, non-propensity purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In meeting this burden, the

government must prove that the evidence is "relevant to an issue, such as an element of an offense, and [is] not . . . offered to establish the general character of the defendant." *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997)

*United States v. Hall*, 858 F.3d 254, 260 (4th Cir. 2017).

There is a wealth of legal commentary appropriately criticizing that courts have often come to allow the exceptions of Rule 404(b)(2) to swallow the *rule* (of Rule 404(b)(1)). *See* Deena Greenberg, *Closing Pandora's Box: Limiting the Use of 404(b) to Introduce Prior Convictions in Drug Prosecutions*, 50 HARV. C.R.-C.L. L. REV. 519, 543 (2015) ("Courts' justification for admitting prior convictions to prove intent, however, often collapses into only general propensity reasoning, which is explicitly forbidden under 404(b)."); *see also Thompson v. United States*, 546 A.2d 414, 421 (D.C. 1988) ("Intent is an element of virtually every crime. If the 'intent exception' warranted admission of evidence of a similar crime simply to prove the intent element of the offense on trial, the exception would swallow the rule.").

Prosecutors commonly and inappropriately assert that a prior drug conviction is relevant to proving a defendant's intent to possess or distribute drugs in a later case. The problem of course is not that the assertion is necessarily wrong; a past intent to possess or distribute drugs might well make future intent to do the same thing more likely.  Rather, the problem is that a prior conviction is often relevant to proving intent *only because* it suggests to the jury that the defendant is the kind of person who intends to possess or distribute drugs – exactly what F.R.Evid. 404(b) was designed to prohibit.

With that in mind, this is not a difficult or close case. In *Hall, supra*, the court found that the government had failed to establish that its other-acts evidence—the defendant's prior conviction for possession of marijuana—was relevant to proving that he had committed the presently charged offense of

possession of marijuana with intent to distribute in any way other than by means of an inference about character.

> Because Defendant's prior possession conviction did not require a finding of specific intent, the only relevance that conviction could have to his intent to distribute marijuana on a later, unrelated occasion is that it tends to suggest that Defendant is, in general, more likely to distribute drugs because he was involved with drugs in the past. This is precisely the propensity inference Rule 404(b) prohibits.

858 F.3d 254, 267. Critically, however, *Hall* went on to explain in regard to the defendant's prior for possession of marijuana with intent to distribute:

> [T]he government introduced the fact of Defendant's prior possession with intent to distribute convictions without providing any evidence linking the prior convictions to the charged offense. The government did so notwithstanding that it bears the burden of establishing the admissibility of Rule 404(b) evidence and that the fact of a defendant's past involvement in drug activity "does not in and of itself provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, place, or pattern of conduct."
> . . . .
> We therefore conclude that Defendant's <u>prior possession with intent to distribute convictions were relevant to Defendant's intent to distribute the marijuana inside the Steadham Road residence only if we credit the idea that Defendant's prior involvement with marijuana renders "[t]he charged acts . . . more plausible."</u> "But this, once again, is <u>precisely the criminal propensity inference Rule 404(b) is designed to forbid.</u>"

*Id.* at 272-275 (emphasis added). *See also, e.g., United States v. Gray*, 771 F. App'x 976, 980 (11th Cir. 2019) ("[E]ven if it were possible to accidentally commit armed carjacking, Gray's prior convictions do nothing to rebut that possibility. They were relevant only to invite precisely the sort of propensity

reasoning that Rule 404(b) forbids: that Gray probably carjacked this car because he is the sort of person who does that kind of thing."); *United States v. Matthews*, 431 F.3d 1296, 1313 (11th Cir. 2005) (Tjoflat, J., specially concurring) ("The evidence of Matthews's 1991 arrest was admitted for no purpose other than to show propensity to engage in criminal activity: exactly the purpose for which Rule 404(b) prevents evidence to be admitted."); *United States v. Sanders*, 964 F.2d 295, 299 (4th Cir. 1992) ("All that the evidence of the prior conviction of assault could possibly show was Sanders' propensity to commit assaults on other prisoners or his general propensity to commit violent crimes. . . . This is exactly the kind of propensity inference that Rule 404(b)'s built-in limitation was designed to prevent."); *United States v. Brown*, 880 F.2d 1012, 1015 (9th Cir. 1989) ("The prior acts clearly establish Brown's propensity for violence, but that is precisely the use of evidence barred by Rule 404(b).").

Just so here vis-à-vis Shumake's pending SEC case.   Indeed, the SEC *alleges* that Shumake was a mastermind of some fraud regarding marijuana more than ***two years afte*r** the seizure in this case (that he made misrepresentations in order to crowdfund some cannabis related endeavors. *See* Complaint, Case No. 21-cv-12193 Doc. 1, at p. 2 ¶ 4 (alleging Shumake made offerings and sold securities from September 2018 through May 2019 and from May 2019 through June 2020.) However, the court has already dismissed the main charge against Shumake –  that he made any statements, misleading, fraudulent or otherwise, in an offering – precisely because he was not (even per the allegations) the person or entity with ultimate authority over the statement. *See* **Exhibit C1**, transcript of motion hearing and subsequent written order, attached hereto. Indeed, Shumake based his motion to dismiss in no small part there on the fact that the people and entities who did have ultimate authority (named defendants in that case) were an experienced securities attorney and seasoned securities businessman and owner who Shumake

was openly doing marketing work for. *See* **Exhibit C2**, Shumake Motion to Dismiss. Those civil Defendants have plead guilty and agreed to large fines. **Exhibit C3**, Judgments; **Exhibit C4**, Case Docket at p. 3, Docs. 20-22, 26-27, 30-31. In other words, if anyone was responsible for misrepresentations, it was the named defendants who have plead there.

Moreover, while there remains lesser causes against Shumake in that case, the case is pending and in its early discovery stages, and Shumake maintains that none of the allegations of wrongdoing have any merit on the facts or law (*see* **Exhibit C5**, Shumake answer; **Exhibit C4**, Case Docket at p. 4, showing discovery and case management plan). It is purely speculative that the remaining causes will not eventually meet the ultimate fate of the main charge that Shumake was the maker of a fraudulent offering.

Thus, in any event, Shumake's prior involvement in that tangentially marijuana related activity is relevant to this case "only if we credit the idea that [his] prior involvement with marijuana renders '[t]he charged acts . . . more plausible[ ]' – precisely the criminal propensity inference Rule 404(b) is designed to forbid." *Hall, supra*.

For those reasons, the existence of and details about *United States Securities and Exchange Commission v. Shumake*, et al., E.D.Mi. Case No. 21-cv-12193 should be excluded here pursuant to Rule 404(b).

Furthermore, even assuming arguendo that such evidence could be admitted pursuant to the exceptions of Rule 404(b), it is inadmissible because it is more prejudicial than probative. *See* Rule 403. The evidence has, if any, very limited probative value. It is very prejudicial, for the reasons laid out above. Again, it is only probative to the extent it suggests that Shumake was involved, albeit tangentially, in the marijuana industry doing marketing for experienced securities attorney and securities businessmen thereby having some at best nominal tendency

to show that he has a propensity to be involved in the marijuana business, and therefore, was vis-à-vis the money in this case contrary to his testimony. The evidence should be excluded.

### Conclusion

The Court should exclude any evidence related to Shumake's pending civil action (*United States Securities and Exchange Commission v. Shumake*, et al., E.D.Mi. Case No. 21-cv-12193).

### Claimant's Motion in Limine # 2
### To Increase Government's Trial Burden
### From Preponderance Of Evidence To Clear And Convincing Evidence

Claimant moves to increase the Government's trial burden (21 U.S.C. § 881(a)(6); 18 U.S.C. § 983(c)(1)) from preponderance of evidence to clear and convincing evidence because the preponderance burden violations Shumake's Constitutional due process rights. *See Leonard v. Texas*, 580 U.S. 1178, 137 S. Ct. 848 (2017) (denying cert., Statement of THOMAS, J.); *Santosky v. Kramer*, 455 U.S. 745 (1982); *but see United States v. $114,700.00 in United States Currency, Civil Action No. 17-cv-00452-CMA-GPG, 2018 U.S. Dist. LEXIS 16557* (D. Colo. Feb. 1, 2018) (refusing to impose a higher burden in forfeiture case like the present).

The specific legal issue is whether 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 983(c)(1), which permit the forfeiture of an individual's private property to the federal government upon a finding that the property was connected to marijuana sales, violates the United States Constitution because the statutes allow such a forfeiture on essentially the lowest possible burden of evidence (preponderance of evidence).

The proper legal test or framework for this question is established in

*Mathews v. Eldridge*, 424 U.S. 319 (1976) and its progeny, which applied the *Eldridge* test to find that a statute authorizing the termination of parental rights upon mere preponderance violated the Constitution. Specifically, the test to determine whether a particular standard of proof satisfies Due Process requires the Court to analyze "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure[.]" *Santosky,* 455 U.S. 745, 754 (citing *Eldridge*, 424 U.S. at 335).

Initially, while the Court certainly should not take this motion lightly, i.e. "deference [ ] customarily must [be] pa[id] to the duly enacted and carefully considered decision of a coequal and representative branch of our Government" (*Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 319 (1985)), this Court – and presumably and eventually the Supreme Court –, not Congress, is the ultimate arbiter of whether the Constitution has been violated. *See e.g., Sable Communications of Cal. v. FCC*, 492 U.S. 115, 129 (1989) ("To the extent that [it is] suggest[ed] that we should defer to Congress' conclusion about an issue of constitutional law, our answer is that while we do not ignore it, it is our task in the end to decide whether Congress has violated the Constitution [ ] particularly [ ] where the Legislature has concluded that its product does not violate the First Amendment[,] Deference to a legislative finding cannot limit judicial inquiry when First Amendment rights are at stake.") (internal citations and quotations omitted).

Moreover, as *Cook* confirms, less deference is due where, like here, a fundamental right and due process is at issue:

> In the equal protection setting, the Supreme Court has repeatedly emphasized the deferential nature of rational-basis review, including the admonition that it does not "authorize the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative

policy determinations made <u>in areas that neither affect fundamental rights</u> nor proceed along suspect lines." [ ] "For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity," [but] [t]here are <u>constitutional limitations on Congress' power to enact legislation, notably including the Due Process Clause</u> of the Fifth Amendment.

429 F. Supp. 2d at 397-398 (emphasis added).

## A. The Countervailing Governmental Interest, i.e. The Impact Of A Higher Burden On The Government's Interest Weighs For Shumake

The "countervailing governmental interest" factor) weighs for Shumake. The Government will likely emphasize its interest in fighting drug crime, yet such misses the point - *Santosky* teaches us that the government's interest factor is to be analyzed with a finer point, namely that the Court must look at the impact of a higher burden on said government interest. Indeed, as to this factor, *Santosky* analyzed a state statute that authorized the termination of the parent-child relationship on a finding of neglect/abuse by the parent, and emphasized that, on its facts, the (state) government had dual interests, "a *parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." 455 U.S. 745, 766. Just so here – Shumake assumes for purposes of analysis that the government has a legitimate interest in regulating drugs [1] but thereby the government also has an interest in minimizing costs of the administration of such regulation, per *Santosky*.

---

[1] Shumake does not concede that the federal government has a legitimate interest in criminalizing and prohibiting marijuana, and submits that it is certainly not a particularly compelling or strong interest, as will be discussed. At least 20 states and the District of Columbia have legalized the recreational adult use of marijuana, with our state of course being on the earlier end of that trend.

Assuming *arguendo* and for a moment that the government's interest in regulating drugs is as important and "urgent" as New York's "interest in the welfare of the child" (at issue in *Santosky*, *id*.), precedent requires analysis of whether and how much a <u>heightened burden</u> will have any negative <u>impact on</u> that *parens patriae* interest and/or administrative interest.

> <u>The State's interest</u> in finding the child an alternative permanent home arises only "when it is *clear* that the natural parent cannot or will not provide a normal family home for the child." [ ]. At the factfinding, that goal <u>is served by procedures that promote an accurate determination</u> of whether the natural parents can and will provide a normal home.
> Unlike a constitutional requirement of hearings, [ ], or court-appointed counsel, <u>a stricter standard of proof would reduce factual error without imposing substantial fiscal burdens upon the State</u>. As we have observed, 35 States already have adopted a higher standard by statute or court decision without apparent effect on the speed, form, or cost of their factfinding proceedings. [ ]

*Santosky*, 455 U.S. 745, 767 (emphases added). Further as to impacts on administration:

> Nor would an elevated standard of proof create any real administrative burdens for the State's factfinders. New York Family Court judges already are familiar with a higher evidentiary standard in other parental rights termination proceedings not involving permanent neglect. [ ]. New York also demands at least clear and convincing evidence in proceedings of far less moment than parental rights termination proceedings. See, *e. g*., N. Y. Veh. & Traf. Law § 227.1 (McKinney Supp. 1981) (requiring the State to prove traffic infractions by "clear and convincing evidence") …; see also *Ross* v. *Food Specialties, Inc*., 6 N. Y. 2d 336, 341, [ ] (1959) (requiring "clear, positive and convincing evidence" for contract reformation). We cannot believe that it would burden the State unduly to require that its factfinders have the same factual

certainty when terminating the parent-child relationship as they must have to suspend a driver's license.

*Id.* at 767-768.

Here, there is even less concern than in *Santosky* as to the costs of increasing the burden on the government's administrative concern. As the government and Magistrate are quick to point out, a civil forfeiture claimant like Shumake already has a statutory right to a jury trial and generally all the advantages, protections, and limitations of the Federal Rules of Civil Procedure at and leading to trial. Federal District Courts often and routinely preside over civil forfeiture actions by the government. Thus, there is literally zero administrative cost to increasing the burden of proof in this civil forfeiture proceeding and others like it – all that would have to change is literally four words on the jury instruction.

There is no serious argument that an increase in the burden of proof imposes any significant administrative costs for the government.

Furthermore, the Ninth Circuit has found that stripping drug dealers of their profits – what the Government would claim it is seeking here – is not as compelling a government interest as actually putting the drug dealers in jail in the first instance:

> [T]he exclusion of evidence in forfeiture proceedings is <u>without the major societal cost</u> associated with exclusion in criminal cases: <u>setting a criminal free</u>. Justice Cardozo's famous critique of the exclusionary rule, that it allows "[t]he criminal . . . to go free because the constable has blundered," does not apply to forfeitures. [ ]. <u>The only tangible cost to society from excluding evidence in a case like ours is monetary, a far less compelling reason</u> to restrict the rule's application <u>than the risk of freeing a guilty party.</u>

*U.S. v. $186,416.00*, 590 F.3d 942, 950 (9th Cir. 2010) (emphasis added) (finding that the Fourth Amendment exclusionary rule applies in civil forfeiture actions).

Thus, even assuming *arguendo* that marijuana prohibition is a legitimate government exercise of a legitimate government interest, the government's interest in forfeiting people's marijuana money is not, on balance, as compelling as the federal government's interest in putting illegal marijuana sellers behind bars or New York state's interest in preserving and promoting the welfare of children.

The consequence is that the government interest factor holds much less weight here than it did in *Santosky*, where the Court imposed a clear and convincing standard on a statute that permitted revoking custody on a mere preponderance of evidence. In other words, like in *Santosky*, this first (government interest) factor here weighs for invalidating the preponderance burden, and at least imposing a higher standard of proof, as "[a] standard of proof more strict than preponderance of the evidence is consistent with both [*parens patriae* and administrative government] interests." *Cf. Santosky*, 455 U.S. 745, 766.

As Justice Thomas recently pointed out, historically, "[p]roceeding *in rem* in [customs and piracy] cases was often justified by necessity, because the party responsible for the crime was frequently located overseas and thus beyond the personal jurisdiction of United States courts [and] [t]hese laws were also narrower with respect to the type of property they encompassed. For example, they typically covered only the instrumentalities of the crime (such as the vessel used to transport the goods), not the derivative proceeds of the crime", and "[f]orfeiture of criminal proceeds is a modern innovation" *Leonard v. Texas*, 137 S. Ct. 847, 849 (2017) (emphasis added). Justice Thomas' point was thus that modern drug asset forfeitures have not been properly analyzed to determine if they comply with the Constitution. *See also, e.g., id.* at 847 ("This petition asks an important question: whether modern civil-forfeiture statutes can be squared with the Due Process Clause[.]"). More importantly, Justice Thomas' concern stemmed from the fact that the typical forfeiture claimant, and person most likely to be adversely affected

by the well-documented abuse of civil forfeiture was a United States citizen, not an elusive international kingpin: "[t]hese forfeiture operations frequently target the poor and other groups least able to defend their interests in forfeiture proceedings. *Id.* at 848.

In the overwhelming and vast majority of modern civil drug asset forfeiture proceedings, the claimant is a U.S. citizen who should be afforded the protections of our Constitution. In the rare case of an elusive international drug trafficker, they either shows up and avails herself or himself to the jurisdiction of the Court or never contests the forfeiture in the first place allowing the property to be summarily forfeited, which requires the government to make no showing whatsoever as to the merits. *E.g.,* 19 U.S.C. § 1609(a).

The countervailing governmental interest factor, i.e. the impact of a higher burden on the government's interest, weighs for Shumake.

**B.   The Risk of Error Factor Weighs for Shumake**

The second risk-of-error factor also weighs heavily for Shumake's position:

> [W]e must next must consider both the risk of erroneous deprivation of private interests resulting from use of a "fair preponderance" standard and the likelihood that a higher evidentiary standard would reduce that risk. [ ]. Since the factfinding phase of a permanent neglect proceeding is an adversary contest between the State and the natural parents, <u>the relevant question is</u> whether a preponderance standard fairly <u>allocates the risk</u> of an erroneous factfinding <u>between these two parties</u>.

*Santosky*, 455 U.S. 745, 761 (emphasis added). As to this factor, *Santosky* pointed out that "[b]ecause parents subject to termination proceedings are often poor, uneducated, or members of minority groups, [ ], such proceedings are often vulnerable to judgments based on cultural or class bias[,] [and] [t]he State's ability to assemble its case almost inevitably dwarfs the parents' ability to mount a defense

[, a] disparity between the adversaries' litigation resources." *Id.* at 763.[2]  Per *Santosky,* this disparity helped "create[ ] a significant prospect of erroneous termination" and that a preponderance "standard of proof that by its very terms demands consideration of the quantity, rather than the quality, of the evidence may misdirect the factfinder in the marginal case", so "[r]aising the standard of proof would have both practical and symbolic consequences" and "[a]n elevated standard of proof … would alleviate 'the possible risk that a factfinder might decide to [deprive] an individual based solely on a few isolated instances of unusual conduct [or] . . . idiosyncratic behavior.' " *Id.* 764.

The parallels from the *Santosky* analysis of this factor to civil forfeiture actions are striking and undeniable. Just like in the case of parent termination proceedings, if not more so, forfeitures disproportionately and perversely affect those in our society who are most likely to be without the adequate financial means to match the litigation resources of the federal government:

> These forfeiture operations frequently target the poor and other groups least able to defend their interests in forfeiture proceedings. [ ]. Perversely, these same groups are often the most burdened by forfeiture. They are more likely to use cash than alternative forms of payment, like credit cards, which may be less susceptible to forfeiture. And they are more likely to suffer in their daily lives while they litigate for the return of a critical item of property, such as a car or a home.

*Leonard, supra*, 137 S. Ct. at 848 (citations omitted). *See also, e.g., U.S. v. $14,665,* 33 F. Supp. 2d 47, 48 (D. Mass. 1998).

The federal government's resources are for all practical purposes unlimited.

---

[2] The *Santosky* Court also found that the "disparity between the adversaries' litigation resources is matched by a striking asymmetry in their litigation options [because] [u]nlike criminal defendants, natural parents have no 'double jeopardy' defense against repeated state termination efforts." 455 U.S. 745, 764.

Notably, the government employs Assistant United States' Attorneys within all local U.S. Attorney's Offices whose sole responsibilities are litigating forfeiture actions, and are separated from the Assistant United States Attorneys prosecuting criminal actions in the same district. *See, e.g., U.S. v. $85,668.00*, 2015 U.S. Dist. LEXIS 13933, *4 (D. Utah Feb. 4, 2015) (recognizing "uncontroverted evidence [ ] that civil forfeiture is a practice specialty[,] … prosecuted by specialized departments of all federal law enforcement agencies and [ ] special forfeiture sections of U.S. Attorney's offices across the country …"). The federal government has a large, well-funded machine set up to aggressively litigate civil forfeiture cases.

By contrast, federal forfeiture claimants are usually the young and poor, and by definition, have had assets of significant value unexpectedly <u>seized</u> by the very entity that ends up being its litigation adversary and that has limitless resources for its case.

Therefore, just as in *Santosky*, if not more so here, there is marked "disparity between the adversaries' litigation resources."

To be sure, as the government concedes, the most recent version of the civil forfeiture statute provides a right to counsel <u>only</u> when a forfeiture of a personal residence is being sought or when an attorney has been appointed in a related criminal case. *See* Doc. 31 at 8-9; 18 U.S.C. ¶ 983(b). Thus, in the vast majority of <u>purely civil</u> forfeiture actions, there is no ability of a claimant to obtain a court appointed counsel. As a consequence, the vast majority of federal forfeiture actions go uncontested. *See, e.g.,* United States Attorneys' Bulletin, Vol. 55, No. 6, November 2007, *Overview of Asset Forfeiture Law in the United States*, Stefan D. Cassella, Special Assistant United States Attorney United States Attorney's Office,

Eastern District of Virginia, at 12 [3] ("The vast majority of all federal forfeitures are administrative forfeitures, for the simple reason that <u>the vast majority of all forfeiture proceedings are uncontested</u>. Prior to the enactment of [CAFRA in 2000], the Drug Enforcement Administration (DEA) estimated that 85 percent of forfeitures in drug cases were uncontested. Since CAFRA, which made it easier to contest a forfeiture action, <u>the number of uncontested DEA cases has dropped to 80 percent</u>. Other seizing agencies report similar figures.") (emphasis added).

Further, like in *Santosky*, the Government here is not required to link the defendant property to a specific drug transaction and may meet its burden with circumstantial evidence linking it to drug trafficking generally.  *See* Doc. 108, Govt. Response to Claimant's Summary Judment Motion, at 11, lines 7-26 (citing cases). In other words, the preponderance standard allows a finding of forfeiture "by … quantity, rather than the quality, of the evidence [so] may misdirect the factfinder in the marginal case." *Cf. Santosky,* 455 U.S. at 764.

Given both the disparity in the parties' respective resources and the minimal, mere preponderance burdens in both *Santosky* and in civil forfeiture actions, there is serious "risk that a factfinder might decide to [deprive] an individual based solely on a few isolated instances of unusual conduct [or] . . . idiosyncratic behavior.' " *Cf.* 455 U.S. 745, 764.

The second *Eldridge* factor, the risk of erroneous findings and benefit of a heightened standard in civil forfeiture, weighs heavily for invalidating the preponderance standard, the Government's and Magistrate's unsupported speculation notwithstanding.

## C.   The Private Interests Factor Weighs Heavily for Shumake

As to the final factor - the private interest at issue –  it is rudimentary that

---

[3] Viewed at https://www.justice.gov/sites/default/files/usao/legacy/2007/12/21/usab5506.pdf.

private property is sacred and protected in the Constitution. Indeed, it is explicit in the Fifth Amendment itself that "[n]o person shall … be deprived of [ ] liberty, <u>or property</u>, without due process of law." (emphasis added). In other words, property is explicitly mentioned parallel to liberty in the due process clause.

> [T]he first *Eldridge* factor — the private interest affected — weighs heavily against use of the preponderance standard at a state-initiated permanent neglect proceeding. We do not deny that the child and his foster parents are also deeply interested in the outcome of that contest. But at the factfinding stage of the New York proceeding, the focus emphatically is not on them.
> The factfinding does not purport — and is not intended — to balance the child's interest in a normal family home against the parents' interest in raising the child. Nor does it purport to determine whether the natural parents or the foster parents would provide the better home. <u>Rather, the factfinding hearing pits the State directly against the parents. The State alleges that the natural parents are at fault.</u> [ ] The questions disputed and decided are what the State did — "made diligent efforts," [ ] — and what the natural parents did not do — "maintain contact with or plan for the future of the child." [ ]

*Santosky,* 455 U.S. 745, 759-760 (emphasis added).

Just so here, the government, with its limitless resources, is pitted against the property owner. The government alleges that custody of the property should be stripped from the natural property owner, and in the overwhelmingly vast majority of cases, in the standard civil forfeiture scenario, the government alleges that the natural property owner is at fault.

The right to private property is a fundamental right, and citizens are explicitly entitled to due process of law when the government seeks to deprive them of that right. Just as in *Santosky*, this factor weighs heavily against use of the preponderance standard at the government-initiated permanent deprivation proceeding that is a civil forfeiture action.

Furthermore, what is at stake here is more than just a loss of money – a verdict for the Government is a finding that Shumake himself was involved in a dishonest scheme selling drugs illegally, i.e. "quasi-criminal wrongdoing."

> The intermediate standard, which usually employs some combination of the words "clear," "cogent," "unequivocal" and "convincing," is less commonly used, but nonetheless "is no stranger to the civil law." [citations]. One typical use of the standard is in <u>civil cases involving allegations of</u> fraud or <u>some other quasi-criminal wrongdoing by the defendant.</u> The <u>interests at stake in those cases are deemed to be **more substantial** than mere loss of money</u> and some jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof. Similarly, this Court has used the "clear, unequivocal and convincing" standard of proof to protect particularly important individual interests in various civil cases [like] deportation[,] denaturalization[, and] denaturalization.

*Addington v. Texas*, 441 U.S. 418, 424 (1979) (emphasis added).

*Addington's* analysis of *In re Winship*, 397 U.S. 358, 370 (1970) teaches us that when "the basic issue [is] whether the individual in fact committed a criminal act" a heightened standard is required even if the proceeding is "civil." *Id.* at 427-8. *Winship* "supports the proposition that where factual findings of criminal acts must precede" the taking of an individual's liberty interests, requiring such findings by heightened standards beyond preponderance are appropriate and required.

**D. A Clear and Convincing Standard is Appropriate Here**

As discussed, principled analysis of the *Eldridge* factors shows that all weigh heavily against continued use of the preponderance standard here. First, citizens' right to property is fundamental, sacred and explicitly protected by constitution. Second, the government's interest in seizing property related to marijuana sales is not as compelling as its interest in putting drug dealers in jail or

protecting children. More importantly, this government interest is furthered by accurate adjudications of whether money is in fact from marijuana sales, and there is no added administrative cost to the government in raising the present standard. Third, the near-equal allocation of risk of the preponderance standard, with such a disparity between the government and a civil forfeiture claimant, is untenable, and is cured with a heightened standard.

> The logical conclusion of this balancing process is that the "fair preponderance of the evidence" standard [ ] violates the Due Process Clause of the Fourteenth Amendment. The Court noted in *Addington*: "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." [ ]. Thus, at a parental rights termination proceeding, a near-equal allocation of risk between the parents and the State is constitutionally intolerable. The next question, then, is whether a "beyond a reasonable doubt" or a "clear and convincing" standard is constitutionally mandated.

*Santosky, supra*, 455 U.S. 745, 768 (emphasis added).

Finally, for the purpose of determining which standard to apply, it is helpful to note that the courts have also looked to historical precedent and what evidentiary standard most U.S. jurisdictions apply to a particular issue. *Rivera*, 483 U.S. at 577-578; *Santosky*, 455 U.S. 745, 768-769. As noted by Justice Thomas, historically, civil forfeiture was initially only permitted in much narrower circumstances than - and excluding those such as - the present.  Furthermore, early precedent suggests that the burden was initially beyond a reasonable doubt. *Leonard v. Texas*, 137 S. Ct. at 849-850, Doc. 23 at 4-5 (both citing *U.S. v. Brig Burdett*, 34 U.S. 682, 9 Pet. 682, 690 (1835)).

It was only during the height of the misguided and disastrous war on drugs in the 1980s and 1990s that many states passed forfeiture statutes allowing

preponderance burdens and, even in some instances, probable cause burdens for civil forfeiture.  As a result, civil forfeiture, and the abuse thereof, exploded. However, in recent years, with increasing societal displeasure with the practice and the rampant abuses of the practice, many states have begun to raise the burdens in civil forfeiture proceedings. [4]  Notably, California now requires either clear and convincing evidence, or beyond a reasonable doubt and a criminal conviction, depending on the value of the property sought to be forfeited. Cal. Health and Safety Code § 11488.4(i) (2016).  States have now begun to reverse course and require at least a clear and convincing standard. Given that the main three *Eldridge* factors weighs heavily for a beyond a reasonable doubt standard, or at least a clear and convincing standard, the current preponderance standard for federal civil forfeiture does not survive constitutional scrutiny.

## CONCLUSION

For the foregoing reasons, this Court should impose a standard of clear and convincing evidence for the forfeiture of Shumake's Defendant property.

Respectfully Submitted,

November 3, 2023

s/David M. Michael_____
DAVID M. MICHAEL
LAW OFFICES OF MICHAEL & BURCH

s/Edward M. Burch_____
EDWARD M. BURCH
LAW OFFICES OF MICHAEL & BURCH


Attorneys for Claimant
ROBERT SHUMAKE

---

[4] *See e.g.*, http://ij.org/report/policing-for-profit/grading-state-federal-civil-forfeiture-laws/ ; http://ij.org/wp-content/uploads/2015/11/figure-7-updated-3.jpg.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

 I hereby certify that, on 3 November 2023, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

       <u>*s/Edward M. Burch*    </u>
       EDWARD M. BURCH
       Attorney for Claimant